# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| LUKAS YANT, individually and on behalf of all others similarly situated,<br><br>                  Plaintiff,<br><br>    v.<br><br>WINIX GLOBAL LLC and WINIX AMERICA, INC.,<br><br>                  Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lukas Yant ("Plaintiff") brings this action on behalf of himself individually, and all others similarly situated, against Defendants Winix America, Inc. and Winix Global LLC ("Defendant" or "Winix").[1] Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This action arises from the false and misleading representations that Defendant made for years about its Winix Models 6300, P300, 5300, 5500, 5300-2, 6300-2, AM90, C909, 9800, C535 and C545 HEPA air purifiers (the "Air Purifiers"), along with their respective replacement filters (collectively, the "Products").

2.      Specifically, Defendant represented that the Air Purifiers were equipped with "True" High Efficiency Particulate Air (HEPA) filters when in fact they were not.  Defendant

---

[1] For purposes of this action, Defendants shall be treated and referred to as a singular entity: "Winix" or "Defendant."

also represented that the replacement filters it sells for the Air Purifiers are "True HEPA" filters when in fact they were not.

3.      Independent testing by Plaintiff's counsel shows that the filters used in the Air Purifiers and the replacement filters do not meet HEPA standards.

4.      Reasonable consumers have no opportunity to find this out for themselves because they cannot conduct HEPA standard testing.

5.      Defendant knew this but continued hocking its wares, making a killing selling the Air Purifiers *and* replacement filters since the outset of the COVID-19 pandemic.  Defendant sold its Products through Costco and on Amazon.com, among other retailers.  In fact, some of the Air Purifier models were the only air purifiers sold in Costco stores throughout the entire COVID-19 pandemic – generating hundreds of millions of dollars of sales.

6.      Defendant has profited greatly from the explosion in the air purifier market brought about by the ongoing COVID-19 pandemic and yearly "once-in-a-lifetime" wildfires that have ravaged the United States.  Consumers are rightfully concerned about maintaining indoor spaces that are free of harmful pathogens and contaminants.  As a result, a large portion of Defendant's gargantuan profits are attributable to the HEPA filtration claims that it falsely made about its Products.

7.      But for Defendant's HEPA claims, the fair value of its Air Purifiers would have been substantially lower (i.e., their market price would have been closer to non-HEPA air purifiers, which sell at a discount compared to air purifiers with HEPA filters).  Put differently, Defendant's HEPA misrepresentations allowed it to overcharge consumers in the amount of the HEPA-related price premium – assuming there would be a market for Defendant's non-HEPA filters at all.

8. Relatedly, Defendant's false and misleading representations induced reasonable consumers like Plaintiff into purchasing the Products. Had Plaintiff and all other similarly situated consumers known that – contrary to Defendant's knowing representations – the Products did not have HEPA filters, they would have paid less for the Products or not purchased them at all.

9. Plaintiff is now seeking a return of the HEPA-related premiums that Defendant charged for its Products, on behalf of himself and other similarly situated purchasers. Plaintiff asserts claims on behalf of himself and all other similarly situated purchasers of Defendant's Products for: (i) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*.); (ii) fraud; (iii) breach of express warranty; and (iv) unjust enrichment.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed Class; (b) some members of the proposed Class have a different citizenship from the defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate. *See* 28 U.S.C. § 1332(d)(2) and (6).

11. This Court has personal jurisdiction over Defendant Winix America Inc. because it was formed under the laws of Illinois and is headquartered in Illinois.

12. This Court has personal jurisdiction over Defendant Winix Global LLC because it markets and sells the Products in Illinois.

13. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant transacts significant business within this District, the Plaintiff resides within this District, and a substantial

3

part of the events giving rise to at least one of the Plaintiff's claims took place within this District.

## PARTIES

14.     Plaintiff Lukas Yant is a citizen of Illinois, residing in Grange Park, Illinois.  On July 31, 2024, while in Illinois, Plaintiff purchased two of the "Winix True HEPA 4 Stage Air Purifier with Wi-Fi and Additional Filter" Products online from Costco for $259.98.  Plaintiff reviewed and relied on Defendant's warranties and representations about the Product's HEPA filtration capabilities prior to purchasing the Product.  Specifically, Plaintiff saw that the Product was labeled "True HEPA" on the box. Plaintiff reasonably relied on Defendant's representations and believed that the Product had a HEPA filter.  Had Defendant not warranted and represented that the Product had HEPA filters, Plaintiff would not have purchased the Product or would have paid substantially less for it.

15.     Defendant Winix Global LLC is a California company with headquarters in Los Angeles, California.  Defendant Winix America Inc. is an Illinois company with headquarters in Bannockburn, Illinois.  Both of these Winix entities manufacture, distribute, advertise and sell the Products.

## FACTUAL ALLEGATIONS

### A.     Air Purifiers and the Air-Purifier Market

16.     The Environmental Protection Agency estimates that "about 67 million tons of pollution were emitted into the atmosphere in the United States" in 2021 alone.  This pollution comes at great cost to human health: "[p]oor air quality is responsible for an estimated 100,000 premature deaths in the United States each year."  Exposure to air particulates has also been linked to symptoms of depression, cognitive decline, and increased feelings of anxiety.

17.     Air pollution can also be a visceral reminder of human-driven climate change: the

smoke from wildfires that have raged across both coasts of the United States since 2020 has quite literally blocked out the sun and forced millions of people indoors. For many, the smoke has exacerbated health conditions such as asthma or emphysema.

18. As a result, public concern about air pollution is high. In fact, one 2019 survey found that, of about 1000 responses, 43% of respondents indicated that they had a "great deal" of concern about air pollution in the United States and 31% indicated that they had a "fair amount" of concern about air pollution. Taken together, 74% of respondents expressed concern about air pollution. This is in line with the EPA's concerns – the agency places indoor air pollution among the top five environmental health risks.

19. Concern about air quality skyrocketed in 2020, however, as wildfires intensified and the airborne COVID-19 virus shut down the globe.

20. As expected, consumer concern over airborne contaminants has helped the air-purifier market explode, from $8.05 billion in 2019 to $16.83 billion in 2024:[2] "the COVID-19 pandemic has increased the demand for air purifiers, with the growing awareness of COVID-19 associated respiratory ailments and the rising need to curb cross-contamination. Factors such as increasing airborne diseases and growing health consciousness among consumers are driving the market."

21. Air purifiers come in various forms. Among the most effective purifiers are those with HEPA filters. HEPA is an acronym for "High Efficiency Particulate Air." HEPA filters are strictly designed and must adhere to certain specifications to be designated as HEPA.

---

[2] Research and Markets, *Air Purifier Market – Growth, Trends, COVID-19 Impact, and Forecasts (2022–2027)*, WWW.RESEARCHANDMARKETS.COM, https://www.researchandmarkets.com/reports/4987153/air-purifier-market-growth-trends-covid-19 (last visited September 3, 2024).

22.     Specifically, a HEPA filter is a type of pleated mechanical filter that typically consists of sheets of randomly arranged fiberglass or plastic fibers held in an accordion shape by aluminum separators.  To be called a HEPA filter, the filter must capture at least 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a sizes ranging from 0.1 to 0.3 microns.

23.     According to the Centers for Disease Control and Prevention (CDC), HEPA filters "are the most efficient filters on the market for trapping particles that people exhale when breathing, talking, singing, coughing, and sneezing."[3]

24.     For example, even though the SARS-CoV-2 virus is about 0.125 microns in diameter, the CDC has stated that "air purifiers can help reduce airborne contaminants, including viruses, in a home or confined space."[4]

25.     The reason why consumers may care that the air purifier they purchase meets the HEPA standard is self-evident.  It offers near certain protection against the transmission of airborne pathogens in the home (if the purifier is given enough time to circulate the air), and it can also filter out pollution caused from events like wildfires, which are growing ever more frequent.

26.     Consumers want the assurance that the HEPA standard provides, and they are willing to pay more for HEPA filters, i.e., consumers are willing to pay a premium for filters that meet the HEPA standard.  A review of current sales prices, across brands that sell both HEPA and non-HEPA filters (sometimes called "HEPA-type" purifiers), indicates that HEPA purifiers sell – on average – at a 41% premium to non-HEPA filters within the same brand:

---

[3] CENTER FOR DISEASE CONTROL AND PREVENTION, Improving Ventilation in Your Home, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/improving-ventilationhome (last accessed September 3, 2024).

[4] *Id.*

TABLE A

| Model | HEPA | | | Non-HEPA | | | HEPA |
|-------|-------|----------|----------|-------|----------|----------|---------|
| | Price | Coverage | Price/sf | Price | Coverage | Price/sf | premium |
| Molekule | $1,015 | 1,000 sf | $1.02 | $600 | 1,000 sq/ft | $0.60 | 41% |
| Holme | $40 | 80 sf | $0.50 | $35 | 109 sq/ft | $0.32 | 36% |
| Crane | $90 | 250 sf | $0.36 | $61 | 300 sq/ft | $0.20 | 44% |
| Therapure | $180 | 200 sf | $0.90 | $180 | 343 sq/ft | $0.52 | 42% |
| **Average premium:** | | | | | | | **41%** |

27.     Being able to make a 99.97% "HEPA-filtration" claim is thus a huge boon for manufacturers, and they know it.  The HEPA standard claim is a signal to consumers that the product they are purchasing has been constructed to exacting standards and is able to provide superlative levels of filtration.

28.     Accordingly, the phrase "True HEPA" is now ubiquitous in air purifier marketing, including Defendant.  The reason for this is that the phrase carries weight.  It is a signal of quality to consumers – that the air purifier they are buying is of a high grade and worth more than purifiers that do not have a HEPA filter.  Though consumers may not know the filtration efficiency requirements of the HEPA standard, or the technicalities of the various HEPA-standard testing protocols, they recognize the HEPA acronym and are willing to pay more for air purifiers that have it in their marketing and labeling.  If having a HEPA filter was not material to consumers, then manufacturers like Defendant would not advertise the feature so heavily.  In fact, given consumer preference for HEPA filters, there are few, if any, non-HEPA filters left on the market, i.e., there is little to no demand for filters that do not bear the HEPA designation.

29. The materiality to consumers of HEPA representations is further confirmed by enforcement actions taken by regulators including the Federal Trade Commission, which has, among other things, entered into Consent Decrees with manufacturers of air purifiers for claims made about the efficacy of their HEPA purifiers and filters. *See, e.g., In the Matter of Honeywell,* FTC File No. 962-3154.[5]

30. Defendant's representation that its Products are "True HEPA" also carries greater significance to consumers – it communicates that there may be "false" or inauthentic HEPA filters out there, which Defendant assures consumers its Products are not. The use of the term "True HEPA" is thus an affirmation by manufacturers like Defendant that a HEPA is a standardized term with prescribed qualities.

**B.      Defendant's Products and Advertising**

31. At issue in this action are eleven models of Winix HEPA Air Purifiers, ten of which use the same "True HEPA" filter that is interchangeable between them (Filter A), and one "True HEPA" filter that is only applicable to a single model (Filter S). Filter A models include: 6300, P300, 5300, 5500, 5300-2, 6300-2, AM90, C909, 9800 and C535 (Figure 1). Filter S is only applicable to model C545 (Figure 2). The various models have some unique features between them, but they are all substantially similar in that they use either Filter A or Filter S as a basis for their common HEPA claims.

---

[5] *Available at https://www.ftc.gov/legal-library/browse/cases-proceedings/962-3154-honeywell-inc-matter.*



**Figure 1[6]**

**Figure 2[7]**

32.    Defendant crafted common false and misleading HEPA representations on its

packaging and in advertising for each of the Products.

---

[6] https://www.winixamerica.com/product/filter-a-
115115/?_gl=1*1br7z22*_up*MQ..&gclid=CjwKCAjwreW2BhBhEiwAavLwfPoCISmeJltL9br
OwA9wyUaHvFrmXBR2y8thyWHOP_cZa8Fi3VYjJxoCcDcQAvD_BwE

[7] https://www.winixamerica.com/product/filter-s-1712-0096-
00/?_gl=1*ptu0mv*_up*MQ..&gclid=CjwKCAjwreW2BhBhEiwAavLwfPoCISmeJltL9brOwA
9wyUaHvFrmXBR2y8thyWHOP_cZa8Fi3VYjJxoCcDcQAvD_BwE

33.     For instance, Defendant made the following express representations in the advertising for Filters A and S (Figures 1 & 2):

    a.  True HEPA Filter.

    b.  Captures up to 99.99%* of airborne allergens including pollen, dust, smoke, pet dander, and other ultrafine particles as small as 0.003 microns.

34.     With respect the advertising and packaging of the Air Purifiers, Defendant made the following express and common representations for each of them:

    a.  True HEPA.

    b.  Captures 99.97% of particles / pollutants.

35.     Figures 3 and 4 below illustrate these express and common representations of the Air Purifiers on the packaging.



**Figure 3 – Winix Model C545**



**Figure 4 – Winix Model C535**

36.     Taken together, Defendant makes the same implied representation: that the filters used in the Air Purifiers had been tested and performed at or above the "HEPA" standards for filtration.  In reality, they had not.

## C.     Defendant's Products Are Tested And Fail To Meet HEPA Standards

33.     As part of their investigation into the Products, Plaintiff's counsel commissioned several highly reputable and independent American laboratories to conduct testing on Filters A and S.[8]  The results of the testing prove that Defendant's Products do not meet or exceed HEPA-grade.

---

[8] The specific Winix models that were purchased for the test included the C535 (which uses Filter A) and the C545 (which uses Filter S).

34.     The labs chosen by Plaintiff's counsel are often used by companies to validate their filters and are industry leaders in the rigorous and accurate testing of HEPA filters. The labs are certified by ANAB/ANSI, a non-governmental organization that provides accreditation services and training to public and private-sector organizations. Moreover, the labs are well known for their stringent adherence to the various HEPA testing protocols set forth by the European Union, the International Standards Organization, and the United States.

35.     The testing was conducted in accordance with European and American testing protocols. In America the protocol used to establish HEPA-grade is IEST-RP-CC001.7. In Europe, the protocol used to establish claims above HEPA-grade (e.g., 99.99% removal at .003 microns as claimed by Defendant) is EN1822 test. Both protocols test for a filter's ability to filter out fine particles but employ differing methodologies and naming conventions.

36.     The results of the EN1822 test are used to group filters into one of three Class: Efficient Particulate Air Filters (EPA), High Efficiency Particulate Air Filters (HEPA), and Ultra Low Penetration Air Filters (ULPA). For purposes of the test, efficiency is defined as the filtration efficiency against the "most penetrating particle size." Each class has subdivisions as well, depending on the filter's efficiency. Thus, a filter tested under the EN1822 standard which could filter between 85% and 95% of particles at the most penetrating size would be classified as an EPA 10, or "E10" filter. A filter which captures the most penetrating particles at a rate of 99.999995% would be categorized as a ULPA 17, or "U17" filter. HEPA filters can be H13 (99.95%) or H14 (99.995%) before bumping up to the U15 class (99.9995% efficiency).

37.     The American IEST protocol is a bit more straightforward. To be classified as a HEPA filter, the filter must have a filtration efficiency of <u>at least</u> 99.97%. Particles ranging in size from 0.1 microns to 5.0 microns are used in the test. The test is done over eight stages, with

each stage measuring the filtration efficiency for a subset of particle sizes (i.e., measuring how the filter performs for particles between 0.1 and 0.2 microns).

38.     When Defendant's Filter A was tested under the EN1822 standard the results were shocking.  The filtration efficiency at the most penetrating particle size (0.0453 microns) was 93.480%, resulting in a grade of E10, the lowest possible.

39.     Filter A fared no better under the IEST-RP-CC001.7 standard.  At 0.3 microns the filter had an efficiency of 99.603%, well-below the HEPA standard.  The following charts show the full results of both tests.  The EN1822 results are on the left, the IEST results to the right.

FILTER A (EN1822 Results)

| Particle Size Range (µm) | Filtration Efficiency (%) |
|---|---|
| 0.0165 | 97.964 |
| 0.0190 | 97.574 |
| 0.0221 | 96.539 |
| 0.0255 | 95.050 |
| 0.0294 | 94.777 |
| 0.0340 | 94.381 |
| 0.0392 | 93.536 |
| 0.0453 | 93.480 |
| 0.0523 | 93.895 |
| 0.0604 | 94.510 |
| 0.0698 | 95.197 |
| 0.0806 | 96.042 |
| 0.0931 | 96.703 |
| 0.1075 | 97.176 |
| 0.1241 | 97.595 |
| 0.1433 | 97.774 |
| 0.1655 | 97.958 |
| 0.1911 | 98.142 |
| 0.2207 | 98.454 |
| 0.2548 | 98.520 |
| 0.2943 | 98.683 |
| 0.3398 | 99.037 |
| 0.3924 | 99.286 |
| 0.4532 | 99.569 |
| 0.5233 | 99.584 |
| 0.6043 | 99.665 |

FILTER A (IEST-RP-CC-001.7 Results)

| Particle Size Range (µm) | Filtration Efficiency (%) |
|---|---|
| 0.1 - 0.2 | 99.508 |
| 0.2 - 0.3 | 99.603 |
| 0.3 - 0.5 | 99.876 |
| 0.5 - 0.7 | 99.960 |
| 0.7 - 1.0 | 99.993 |
| 1.0 - 2.0 | 99.998 |
| 2.0 - 3.0 | 100.00 |
| 3.0 - 5.0 | 100.00 |

40.     Filter S was tested under the IEST protocol by the lab commissioned by Plaintiff's counsel.  The following results demonstrate that the filter never met or exceeded

99.97% removal at any of the tested particle ranges. At 0.3 microns specifically, the filter only managed 98.87% removal. As such, Filter S is not HEPA-grade.

| | Particles at: (in microns) | | | | | Particles at 0.30 micron only: |
|---|---|---|---|---|---|---|
| 0.10-0.15 | 0.15-0.20 | 0.20-0.25 | 0.25-0.30 | Summed Data | | |
| | | | | 0.10-0.20 | 0.20-0.30 | |
| 1018946 | 441256 | 396516 | 190170 | 1460202 | 586686 | 27402 |
| 27522 | 8364 | 7429 | 2293 | 35886 | 9721 | 311 |
| 97.30 | 98.10 | 98.13 | 98.79 | 97.54 | 98.34 | 98.87 |
| 97.29 | 98.10 | 98.12 | 98.79 | 97.51 | 98.30 | 98.85 |

**D.    But for Defendant's HEPA Misrepresentations, Plaintiff and the proposed Class would have paid less for their Air Purifiers.**

41.    By falsely claiming that its Air Purifiers had HEPA filters, and selling its replacement filters as HEPA, Defendant was able to overcharge Plaintiff and the putative class members in the amount of a HEPA-related premium associated with those claims.

42.    Defendant's HEPA claims appeared on the packaging that its Winix Air Purifiers came in and appeared on the webpages where its products were sold. Accordingly, those claims were seen by all purchasers of the Winix Air Purifiers and replacement filters.

43.    Defendant's HEPA claims misled reasonable consumers. Defendant is one of the nation's leading air-purifier manufacturers, so consumers would reasonably believe Defendant's HEPA claims. Moreover, consumers do not and cannot typically test the accuracy of a HEPA claim before purchasing an air purifier, and Defendant's HEPA claims were expressly false, not impliedly false.

44.    If Defendant had been truthful in its representations about the Products (i.e., that they were not HEPA grade), then the market price of those purifiers and filters would have been lower.

45.    Accordingly, Plaintiff and the proposed Class paid for Defendant's Products at artificially inflated prices.

## CLASS ALLEGATIONS

46. ***Class Definition***.  Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of himself and all other similarly situated consumers, and seek to represent a class (the "Class") defined as:

> All natural persons in Illinois who purchased a Winix 6300,
> P300, 5300, 5500, 5300-2, 6300-2, AM90, C909, 9800, C535,
> C545 or replacement filter during the applicable statutory period.

47. Excluded from the Class are governmental entities; Defendant; and Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

48. Plaintiff also seeks to represent a class of all natural persons **nationwide** who purchased a Winix 6300, P300, 5300, 5500, 5300-2, 6300-2, AM90, C909, 9800, C535, C545 or replacement filter during the applicable statutory period (the "Nationwide Class").

49. Plaintiff reserves the right to modify or expand the definition of the Class to seek recovery on behalf of additional persons as facts are learned in further investigation and discovery.

50. ***Numerosity.***  Members of the Class are so numerous that their individual joinder herein is impracticable.  The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery of Defendant's records.  Class members may be notified of the pendency of this action by mail, email, publication, and/or other media, including social media.

51. ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to:

    a.   Whether the Products are in fact HEPA-grade;

    b.   Whether Defendant's express representations about the capability of the Products included false and/or misleading statements and/or omissions;

    c.   Whether Defendant knowingly made false HEPA claims about the Products;

    d.   Whether Defendant's representations were material;

    e.   Whether an objectively reasonable consumer would have been misled by Defendant's HEPA claims; and

    f.   Whether Defendant's HEPA claims allowed it to charge more for the Products than it otherwise could have.

52.    ***Typicality.***  Plaintiff's claims are typical of the claims of the proposed Class because Plaintiff, like all members of the Class, was induced by Defendant's false and misleading warranties to purchase Defendant's Products without knowing that the Defendant's claims about the Products' filter were false and misleading. The representative Plaintiff, like all members of the Class, has been damaged by Defendant's misconduct in the very same way as the members of the Class. Further, the factual bases of Defendant's misconduct are common to all members of the Class and represent a common thread of misconduct resulting in injury to all members of the Class.

53.    ***Adequacy***.  Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the members of the Class; he has retained counsel competent and experienced in prosecuting class actions; and he intends to prosecute this action vigorously. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

54.    ***Superiority***.  A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Class. Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized

16

litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also represents a potential for inconsistent or contradictory judgments.  By contrast, the class-action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
**Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.**
**(Individually, and on Behalf of the Class)**

55.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1–53 of this Complaint.

56.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

57.     This claim is brought under the law of Illinois.

58.     The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) prohibits unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" in the conduct of any trade or commerce.  815 ILCS 505/2.

59.     Plaintiff and Class members are "consumers" as defined by Section 505/1(e) of the ICFA.

60.     Defendant is a "person" as defined by Section 505/1(c) of the ICFA.

17

61.     Defendant's conduct alleged herein occurred in "trade" or "commerce" as defined by Section 505/1(f) of the ICFA.

62.     Defendant manufactures, distributes, markets, advertises, labels, and/or sells their Products to consumers in Illinois.

63.     As alleged more fully above, Defendant has violated the ICFA by furnishing false and misleading statements about the quality and capabilities of its Products to attract and induce more consumers to purchase its Products than would have otherwise been induced and attracted to the Products without those false and misleading statements.

64.     Defendant's conduct was likely to deceive, and did deceive, Plaintiff and the members of the Class, all of whom are reasonable consumers.  Defendant knew or should have known through the exercise of reasonable care that its claims about its Products' filtration capacities were false and misleading.

65.     Defendant's representations about its Products' HEPA filter were intended to induce reliance, and Plaintiff and the members of the Class read and reasonably relied on the false and misleading affirmative representations when deciding to purchase Defendant's Products.  Defendant's deceptive conduct was a substantial factor in Plaintiff's purchase decisions and the purchase decisions of the proposed Class.

66.     Plaintiff and members of the Class have suffered harm as a result of these violations because they incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

### COUNT II
### Fraud
### (Individually, and on Behalf of the Nationwide Class)

67.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1–53 of this Complaint.

68.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendant.

69.     As alleged in detail above, Defendant misrepresented material facts about the Products, including by misrepresenting to consumers that the Products had HEPA or "True HEPA" filters, despite knowing that they did not.

70.     Defendant was in a position to know (and did know) the true quality and capability of its Products, but it affirmatively warranted that the Products had HEPA filters, when in truth they did not.  In fact, Plaintiff is informed and believe that Defendant knew through its own testing that its Products were not HEPA-grade, and were being falsely advertised as having HEPA filters.

71.     Defendant's misrepresentations, upon which Plaintiff and the members of the Class relied, were intended to induce, and actually did induce, Plaintiff and the members of the Class to purchase the Products.  Defendant induced Plaintiff and the members of the Class to purchase the Products that Plaintiff and the members of the Class would not have purchased, or would have paid substantially less for, had Defendant been truthful about the quality and capability of its Products.

72.     Defendant's fraudulent actions caused damages to Plaintiff and the Class who are entitled to damages and other legal and equitable relief as a result.

## COUNT III
### Breach of Express Warranty
### (Individually, and on Behalf of the Nationwide Class)

73.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1–53 of this Complaint.

74.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendant.

75.     As alleged in detail above, Defendant misrepresented material facts about its Products, including by misrepresenting to consumers that the Products had "HEPA" or "True HEPA" filters, despite knowing that they did not.

19

76. Defendant was in a position to know the true quality and capability of its Products but affirmatively warranted that the Products had HEPA filters, when in truth they did not.

77. Substantial benefits have been conferred on Defendant by Plaintiff and the Class through the purchase of the Products. Defendant knowingly and willingly accepted and enjoyed these benefits.

**COUNT IV**
**Unjust Enrichment**
**(Individually, and on Behalf of the Class)**

78. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1–53 of this Complaint.

79. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendant.

80. As alleged in detail above, Defendant misrepresented material facts about its Products, including by misrepresenting to consumers that the Products had HEPA or "True HEPA" filters, despite knowing that they did not.

81. Defendant was in a position to know the true quality and capability of its Products but affirmatively warranted that the Products had HEPA filters, when in truth they did not.

82. Substantial benefits have been conferred on Defendant by Plaintiff and the Class through the purchase of the Products. Defendant knowingly and willingly accepted and enjoyed these benefits.

83. Defendant either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Products would contain true HEPA filters. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

84. Defendant's acceptance and retention of these benefits of the payments from Plaintiff and the Class under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the Class.

85. Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed Class the following relief against Defendant:

(a) An order certifying the Class and naming Plaintiff's attorneys as Class Counsel to represent the members of the Class;

(b) An order declaring that Defendant's conduct violates the statutes and common law referenced herein;

(c) Compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(d) Prejudgment interest on all amounts awarded;

(e) Restitution and all other forms of equitable monetary relief;

(f) An order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(g) Granting such other and further relief as many be just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: October 20, 2025

**BURSOR & FISHER, P.A.**

By:  */s/Alec Leslie*
　　　Alec Leslie

Alec M. Leslie
1330 Avenue of Americas, 32nd Fl.
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: aleslie@bursor.com

L. Timothy Fisher*
Luke Sironski-White*
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455

Facsimile:  (925) 407-2700
Email:  ltfisher@bursor.com
            lsironski@bursor.com

*Attorneys for Plaintiff*

*\*Pro Hac Vice Application Forthcoming*